## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2020, 1:38 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott A. Steffey,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 13, 2020

Court of Appeals Case No.
19A-CR-1089

Appeal from the Allen Superior Court

The Honorable David M. Zent, Judge

Trial Court Cause No.
02D06-1803-FA-2

**Tavitas, Judge.**

# Case Summary

Scott Steffey appeals his convictions and sentence for child molesting, a Class A felony; child molesting, a Level 1 felony; and vicarious sexual conduct, a Level 3 felony. We affirm.

# Issues

Steffey raises two issues, which we restate as follows:

> I.    Whether the trial court properly admitted testimony from the sexual assault nurse examiner.
>
> II.   Whether the trial court properly imposed consecutive sentences.

# Facts

N.W. ("Mother") and C.P. ("Father") had three children, C.W., W.P., and A.P. C.W. is two years older than W.P., and W.P. is one year older than A.P. Mother had custody of the children, but Mother had substance abuse and mental health issues. Mother and the children lived with Mother's parents, who were friends and neighbors with Steffey.

The children regularly went to Steffey's residence. In approximately 2013, when A.P. was six years old, Steffey began having sexual intercourse with her. A.P. told W.P. about the abuse, and W.P. confronted Steffey. Steffey admitted the sexual activity to W.P. and told W.P. "not to tell anybody." Tr. Vol. I p. 39. W.P. was "a little scared" and did not tell anyone. *Id.* at 40. Steffey began showing pornography to W.P. and C.W. Eventually, Steffey showed W.P. and

C.W. how to have sexual activity with A.P. Steffey told the children that Steffey and the children would "get in trouble" if they told anyone of the abuse. *Id.* at 80. The sexual abuse involved oral and vaginal sex acts, which were occurring daily at some period of time.

[5] In 2017, the children were removed from Mother's custody by the Department of Child Services due to Mother's substance abuse and mental health issues. The children were first placed with an aunt and uncle, and then Father took custody of the children. Steffey continued to babysit and visit the children while they lived with their aunt and uncle and Father, and the sexual abuse continued. A few months after Father obtained custody of the children, law enforcement became involved as a result of an incident involving the children in the neighborhood. At that time, the children disclosed Steffey's sexual abuse.

[6] The State charged Steffey with: Count I, child molesting, a Class A felony, for performing or submitting to sexual intercourse with A.P. between February 2013 and June 2014; Count II, child molesting, a Level 1 felony, for performing or submitting to sexual intercourse with A.P. between July 2014 and August 2017; Count III, vicarious sexual gratification, a Level 3 felony, for directing, aiding, inducing, or causing A.P. to engage in sexual intercourse with C.W. or W.P. with the intent to arouse or satisfy the sexual desires of A.P., C.W., W.P., or Steffey; Count IV, child molesting, a Class C felony, for fondling or touching A.P.; and Count V, child molesting, a Level 4 felony, for fondling or touching A.P.

[7] At a bench trial in March 2019, Angela Mellon, a sexual assault nurse examiner at the Fort Wayne Sexual Assault Treatment Center, testified regarding her medical forensic examination of A.P. During her direct testimony, Steffey objected to Nurse Mellon's testimony on hearsay grounds, but the trial court overruled the objection.

[8] The trial court found Steffey guilty as charged. The trial court did not enter judgment of conviction in Counts IV and V. The trial court sentenced Steffey to: fifty years in the Department of Correction ("DOC") for Count I; forty years in the DOC for Count II; and sixteen years in the DOC for Count III. The trial court noted that "molestation is a crime of violence" and ordered the sentences to be served consecutively, for an aggregate sentence of 106 years in the DOC. Tr. Vol. III p. 34. Steffey now appeals.

# Analysis

## I. Admission of Nurse's Testimony

[9] Steffey argues that the trial court abused its discretion by admitting Nurse Mellon's testimony. The trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). We review rulings on the admissibility of evidence for an abuse of discretion. *Id.* An abuse of discretion occurs "when admission is clearly against the logic and effect of the facts and circumstances." *Id.*

Steffey argues that Nurse Mellon's testimony was hearsay, and the State argues that it was admissible as a hearsay exception under Indiana Evidence Rule 803(4), which provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * * * *
>
> (4) Statement Made for Medical Diagnosis or Treatment. A statement that:
>
> > (A) is made by a person seeking medical diagnosis or treatment;
> >
> > (B) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and
> >
> > (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

"Rule 803(4)'s exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial[.]" *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). "Rule 803(4) reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well." *Id.*

> This belief of reliability, though, necessitates a two-step analysis for admission under Rule 803(4): First, "is the declarant motivated to provide truthful information in order to promote

diagnosis and treatment," and second, "is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." Statements made by victims of sexual assault or molestation about the nature of the assault or abuse—even those identifying the perpetrator—generally satisfy the second prong of the analysis because they assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions.

The first prong of the test, the declarant's motive to promote treatment or diagnosis, is equally crucial to a determination of reliability. "[T]he declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment." With most declarants, this is generally a simple matter: "[o]ften, for example where a patient consults with a physician, the declarant's desire to seek and receive treatment may be inferred from the circumstances."

*Id.* at 260-61 (internal citations omitted).

[12] Steffey makes no argument regarding the first prong on the *VanPatten* test. Steffey does not dispute that A.P.'s statements were "made by a person seeking medical diagnosis or treatment" or that A.P.'s statement "describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause." Evid. R. 803(4).

[13] Steffey argues that "Evidence R. 803(4) should be inapplicable to entities that are quasi-law enforcement entities conducting evidence-gathering activities rather than legitimate medical facilities engaged in the business of diagnosis and treatment of medical problems." Appellant's Br. p. 27. Steffey contends that

the Fort Wayne Sexual Assault Treatment Center should not qualify as a medical provider because it "is an arm of law enforcement and not a medical provider at all." *Id.* at 33. According to Steffey, "the use of Sexual Assault Nurse Examiners as witnesses in sexual abuse cases is merely a ruse designed to allow the State to exploit an otherwise legitimate exception to the Hearsay Rule." *Id.* at 34. Steffey's argument appears to be that A.P.'s statements to Nurse Mellon were made for law enforcement purposes, not medical treatment purposes. This argument concerns only the second prong of the *VanPatten test* and whether the statement was "made for--and [was] reasonably pertinent to--medical diagnosis or treatment." Evid. R. 803(4).

[14]  Nurse Mellon testified that she works at the Fort Wayne Sexual Assault Treatment Center (the "Center"), which has been in operation since 1996. The Center is a licensed and credentialed facility, which serves Allen County and sixteen surrounding counties. The nurses also have privileges at the local hospitals. The Center appears as a standard doctor's office. Nurse Mellon testified that, as part of a medical forensic exam, she performs a head to toe examination looking for injuries; takes a detailed health history from the patient; provides emergency contraceptives and medications to prevent the most common sexually transmitted infections; assesses any mental health issues and provides resources for follow-up counseling; activates a crisis intervention team if the patient is in danger of harming himself or herself or others; provides follow-up testing, including pregnancy testing; provides referrals for testing for sexually transmitted infections; and provides detailed discharge planning,

which can include follow-up with a primary health care physician, follow-up with community resources, and the arrangement of a safety plan. Nurse Mellon then detailed her interactions with A.P., her examination of A.P., and her treatment recommendations for A.P.

[15] The use of sexual assault nurse examiners in a hospital setting has been approved by this Court. *See, e.g., Steele v. State*, 42 N.E.3d 138, 143 (Ind. Ct. App. 2015) (rejecting the defendant's argument that the sexual assault nurse examiner, who examined the patient in a hospital, was acting as a "law enforcement adjunct" rather than a "nurse who was assisting with the diagnosis and treatment of [the victim's] injuries"). Although the Center is not a hospital and does assist in the collection of evidence, as detailed by Nurse Mellon, the Center also provides significant medical treatment and diagnosis of their patients. Under these circumstances, we cannot say that A.P.'s examination at the Center was for law enforcement purposes, and not medical treatment purposes. A.P.'s statements were "made for--and [are] reasonably pertinent to-- medical diagnosis or treatment." *See* Evid. R. 803(4). We conclude that A.P.'s statements to Nurse Mellon were admissible under Evidence Rule 803(4).[1] *See, e.g., Walters v. State*, 68 N.E.3d 1097, 1101 (Ind. Ct. App. 2017) (holding that

---

[1] Steffey makes no argument regarding the admission of State's Exhibit 11, which is A.P.'s medical records from the Fort Wayne Sexual Assault Treatment Center, and we do not address the admissibility of those records.

the testimony of a sexual assault nurse examiner employed by the Center was admissible under Indiana Evidence Rule 803(4)).

[16] Moreover, any error in the admission of Nurse Mellon's testimony is harmless. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Turben v. State*, 726 N.E.2d 1245, 1247 (Ind. 2000); Ind. Trial Rule 61. Nurse Mellon's testimony regarding A.P.'s statements was merely cumulative of the testimony of A.P., W.P., and C.W. Any error was harmless.

## II. Consecutive Sentencing

[17] Next, Steffey argues that the trial court abused its discretion by ordering the sentence for Count III to be served consecutive to the sentence for Count II. Sentencing decisions rest within the sound discretion of the trial court. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[18] According to Steffey, the consecutive sentencing violates Indiana Code Section 35-50-1-2, which provides:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 (before its repeal) to which the defendant is sentenced for felony convictions arising out of an

episode of criminal conduct shall not exceed the period described in subsection (d).

Ind. Code § 35-50-1-2(c). Under subsection (d), "the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following: . . . If the most serious crime for which the defendant is sentenced is a Level 1 felony, the total of the consecutive terms of imprisonment may not exceed forty-two (42) years." I.C. § 35-50-1-2(d)(6). An "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b).

[19] Although vicarious sexual gratification, which was charged in Count III, is not a crime of violence, child molesting, which was charged in Count II, is a crime of violence under the statute. *See* I.C. § 35-50-1-2(a)(11). Steffey argues that "the trial court erred in not limiting the total consecutive sentences in Counts [II] and [III] to a total of 42 years, or, in the alternative, limiting his sentence in Count [III] to the advisory sentence of nine (9) years." Appellant's Br. p. 37. Steffey seems to argue that, because Count III was not a crime of violence, Indiana Code Section 35-50-1-2 limits the trial court's ability to impose consecutive sentencing. Our Supreme Court rejected this argument in *Ellis v. State*, 736 N.E.2d 731, 737 (Ind. 2000). In *Ellis*, the Court held that "consecutive sentencing between a crime of violence and those that are not crimes of violence" is "exempt" from the sentencing limitation of Indiana Code Section 35-50-1-2. *See also Johnson v. State*, 749 N.E.2d 1103, 1110 (Ind. 2001)

("[T]he limitations the statute imposes on consecutive sentencing do not apply between crimes of violence and those that are not crimes of violence."). Steffey's argument fails.

## Conclusion

[20] The trial court properly admitted the testimony of Nurse Mellon and, if the trial court erred, any error was harmless. Additionally, the trial court properly sentenced Steffey. We affirm.

[21] Affirmed.

Najam, J., and Vaidik, J., concur.